IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CNA INTERNATIONAL, INC. d/b/a MC APPLIANCE CORPORATION<br><br>Plaintiff,<br><br>- v -<br><br>WINIA ELECTRONICS COMPANY, LTD<br><br>Defendants. | Civil Action No.:<br><br>**COMPLAINT** |

Plaintiff CNA International, Inc., doing business as MC Appliance Corporation ("MC), alleges as follows:

## NATURE OF THE ACTION

1. This complaint alleges claims for breaches of contract. Specifically, MC seeks to recover damages caused by Winia Electronics Company, Ltd.'s ("Winia") multiple breaches of its agreement with MC, including by failing to:

   a. deliver certain goods (microwaves) promised to MC pursuant to numerous purchase orders;

   b. indemnify MC with respect to claims arising from microwaves Winia manufactured for MC; and

   c. make warranty payments to MC relating to returns, replacements, and repairs of Winia-manufactured microwaves.

2. Plaintiff also seeks a declaratory judgment stating that Winia remains obligated, pursuant to its agreement with MC, to maintain insurance coverage for personal injury and property damage claims relating to Winia products supplied to MC.

## THE PARTIES

3. MC is incorporated under the laws of the State of Illinois, with its principal place of business at Wood Dale, Illinois. MC distributes various home appliances to retailers in the United States under the brand name "Magic Chef."

4. Winia is a corporation organized under the laws of Korea, with its principal place of business located in Guangsan-Gu, Guangju, Republic of Korea.  Winia manufactures and sells various home appliances, including refrigerators, and microwaves.

## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum of $75,000, excluding interest and costs, and the dispute involves a U.S. corporation and a Korean company.

6. This Court has personal jurisdiction over Winia in this action because Winia consented to jurisdiction in this District. The written indemnification portion of the parties' agreement states that it was "crucial to their purchase orders and business relationship," and provides that the terms and conditions therein applied "to all products Manufacturer [Winia] supplies to MC and MC's affiliates." Paragraph IV thereof also provides: "Manufacturer submits to the jurisdiction of the courts located in the, Federal District Court of the State of New Jersey, United States of America in the event of any proceedings in connection with this transaction." (**Exhibit A** at 3.)

7. Venue is proper under 28 U.S.C. §§ 1391(b)(2) pursuant to the aforementioned agreement.

8. In addition, Defendant does substantial business in this District, including through the maintenance of its subsidiary and agent, Winia Electronics America, Inc. ("Winia America"),

which is headquartered in this District and through whom MC transacted a substantial portion of its business with Winia, including with respect to tendering claims pursuant to the Indemnification Agreement.

## FACTUAL BACKGROUND

**The Purchase Orders**

9. For over 20 years, MC and Winia, and Winia's predecessor in interest – Dongbu Daewoo Electronics Corporation – maintained a relationship in which Winia would manufacture and sell microwaves to MC. MC would tender purchase orders to Winia to manufacture given quantities of microwaves, including both over-the-range and countertop models, as required by MC's retail and distribution customers in the United States. MC would in turn sell the microwaves to its customers under the well-known "Magic Chef" brand.

10. The agreement governing the parties' longstanding relationship comprised multiple parts, including: (i) regularly issued and accepted purchase orders, delivery of which was made in separate lots to be separately accepted (**Group Exhibits B** and **C** [excerpted POs]); (ii) the quality assurance portion of the agreement, entered into by the parties on April 27, 2017 (**Exhibit D**); and (iii) the afore mentioned indemnification portion of the agreement, executed on February 22, 2021 (Ex. A).

11. In 2021, the Parties' business relationship soured. Winia produced and shipped certain orders that MC placed in the ordinary course. However, Winia also accepted numerous MC purchase orders covering tens of thousands of microwave units while representing to MC that it could produce and deliver those units by specified dates. But in reality Winia could not fulfill those orders.

12. MC required those ordered units to fulfill the needs and orders of its own

3

customers. True and correct copies of the Purchase Orders that Winia could not fulfill in whole or part ("the Purchase Orders") are attached as Group Ex. B.

13. Specifically, on April 12, 2021, MC submitted a batch of purchase orders for 1,288 countertop microwave units to be shipped by August 24, 2021. (Group Ex. B, 1-3.)

14. Winia accepted these Purchase Orders and affirmatively indicated that it was capable of producing and delivering the ordered microwaves in accordance with MC's requirements.

15. In reliance on these representations by Winia, on May 20, 2021, MC placed orders for an additional 3,271 countertop units to be delivered by June 29, 2021. (*Id*. at 4-9.)

16. Winia also accepted these orders. Winia did not indicate that it would have any difficulties producing these initial batches totaling 4,559 countertop microwaves, nor any future orders contemplated by MC.

17. Winia ultimately shipped 3,809 of the countertop microwaves, and repeatedly assured MC in several teleconferences that the remaining 750 units would be shipped in short order.

18. In reliance on Winia's affirmative representations combined with its failures to disclose any production difficulties, between August and October of 2021, MC submitted purchase orders to Winia for 7,083 additional countertop microwaves. Delivery of these microwaves was to take place between October of 2021 and January of 2022. (Ex. B, 10-20.)

19. Winia accepted these orders, too. Thus, MC ordered a total of 11,642 countertop microwaves from Winia through the purchase orders described above.

20. At no point before issuance of the Purchase Orders did Winia alert MC that it was experiencing operational or financial challenges or that it may struggle to fulfill MC's orders.

21. There were no conditions precedent applicable to MC pursuant to the terms of the parties' agreement. If there were any, MC satisfied the conditions precedent.

22. On the basis of Winia's representations concerning production and delivery, and its acceptance of the Purchase Orders, MC obtained commitments from its customers to purchase the ordered countertop microwave units at prices exceeding the prices MC would pay to Winia.

23. However, Winia never shipped any of the 750 units that were missing from the initial batches of countertop orders.

24. And Winia failed to deliver the 7,083 countertop microwaves that MC had ordered in the subsequent batches. Thus, in total, Winia failed to deliver a total of 7,833 countertop microwaves.

25. Winia provided MC with no advance notice that it would not be delivering the units and never explained to MC the reasons for the missed deliveries.

26. Then, in February of 2022, Winia informed MC that Winia had in fact failed to manufacture any of the 7,833 missing countertop units.

27. MC was then forced to inform its customers of Winia's failure and the orders were canceled.

28. MC suffered lost profits of at least $199,620.00 on these canceled orders and also suffered damage to the good will that it had developed with its customers.

29. While Winia's failure to produce the foregoing 7,833 units was bad enough, that was only a fraction of the units that Winia failed to produce subject to other purchase orders that MC placed.

30. Specifically, MC placed orders for 59,118 over-the-range microwave units that MC had already contracted to sell to its primary customer. Winia knew these orders were for

MC's largest customer, yet it failed to deliver 46,967 of these microwaves. True and correct copies of the over-the-range microwave purchase orders are attached as **Exhibit C**.

31. MC would have realized $3.99 million in revenue on sales of these units to that customer.

32. And, as a result of Winia's failure, MC lost orders from its primary customer for approximately 63,000 additional over-the-range units. MC would have obtained $5.35 million in revenue on such orders.

33. As with the earlier failure to deliver the 7,833 countertop microwaves, Winia provided MC with no notice that it could not fulfill these large orders. In fact, Winia repeatedly assured MC throughout 2021 that it was in the process of manufacturing microwaves for MC pursuant to various purchase orders.

34. For example, on May 26, 2021, MC personnel sent an email to a Winia employee requesting the "earliest production schedule" for certain models of countertop microwaves. The Winia employee responded, "I think it would be around 7/9."

35. Similarly, MC asked Winia several months later to confirm the earliest date by which Winia could manufacture and ship some of the 59,118 over-the-range microwaves that MC had contracted to sell on to its primary customer. Winia responded that it could do so by November 15, 2021.

36. Then, on November 5, 2021, Winia alerted MC that its manufacturing capacity for November and December was limited, but assured MC that it would be able to fulfill the orders by January 8, 2022.

37. Winia would ultimately never produce or ship the vast majority of the ordered microwaves. MC lost out on millions of dollars in sales to its customers as a result of the

6

cancelation of the orders discussed above and the orders that its customers would have placed in the ordinary course of business but for Winia's failures.

38. Winia's failures also caused severe and ongoing harm to MC's commercial relationship with its customers.

39. For instance, in the 20 years prior to 2021, MC sold, on average, well over 100,000 over-the-range microwaves per year to its primary customer. After Winia failed to deliver the microwaves as discussed above, MC's over-the-range microwave sales to this customer plummeted. Sales declined by over 25% in 2022. Through July 2023, this customer has not purchased a single over-the-range microwave from MC.

40. Similarly, retail sales of MC over-the-range microwaves already in the customer's inventory have declined by nearly 90% relative to 2021 due to a lack of preferred placement that MC previously enjoyed prior to Winia's failures to deliver.

41. At the time of this filing, MC's sales of products other than over-the-range microwaves have also declined precipitously with this customer following Winia's failures. MC is currently investigating the extent to which Winia's failures caused such decline.

42. Upon information and belief, Winia's financial condition deteriorated rapidly and materially in 2021 and it has continued to deteriorate such that it is no longer able to pay its liabilities in the regular course of its business, as further described herein.

43. Winia shipped other units to MC during this period in late 2021, during the same period that Winia's breaches and failures described herein were becoming known to MC. Winia has claimed that it is owed approximately $2 million in connection with such shipments. But Winia's own breaches and inability to perform its contractual requirements and provide reasonable assurances of performance, as described throughout this Complaint, as well as the

damages that Winia's multiple breaches have caused and will continue to cause MC, have eliminated any obligation that MC had with respect to those goods during this same period.

**Winia's Quality Assurance Obligations**

44. Prior to Winia's failures, on April 27, 2017, MC and Winia's predecessor in interest, Dongbu Daewoo Electronics Co., Ltd. ("Dongbu"), entered into the written quality assurance portion of the parties' contract. (Ex. D.)

45. Winia assumed the liabilities of Dongbu with respect to the quality assurance portion of the parties' contract.

46. In essence, with respect to quality assurance, the parties agreed to a warranty arrangement under which Winia is required to (1) pay MC certain amounts in the event that MC customers return Winia-manufactured products and (2) reimburse certain warranty expenses incurred by MC. (*Id*.)

47. As with any manufacturer, MC customers did return a certain percentage of Winia-manufactured products and/or receive warranty service or replacements from MC. Winia initially honored the parties' quality assurance terms but became delinquent on its obligations to MC in 2020, ending the year with a balance of over $170,000 due and owing to MC.

48. Winia also failed to make the agreed payments required by the quality assurance terms throughout 2021. At the time of this filing, Winia is in arrears pursuant to the quality assurance terms at least in the amount of $277,290.90.

**Winia's Indemnification Obligations**

49. On February 22, 2021, MC and Winia updated their contract when they entered into a writing titled "Indemnification Agreement," the terms of which also became applicable to the parties' purchase and sale of goods as described above. (Ex. A.)

50. In Section II of the Indemnification Agreement, titled "**Indemnification and Product Liability**," Winia agreed to indemnify and defend MC and its affiliates from, *inter alia*, "all claims, lawsuits, fines, losses, civil penalties or actions, costs, liabilities, damages, and expenses" arising from "the death of or injury to any person . . . or property damage which resulted or is alleged to have resulted from the [Winia's] products or its marketing, sale, rental or use." (*Id*. at 1.)

51. Winia similarly agreed to indemnify and defend MC from all claims arising from "the death of or injury to any person . . . or property damage which resulted or is alleged to have resulted from any acts or omissions of [Winia], its employees and agents, contractors, subcontractors and/or any other persons for whose conduct it may be or is alleged to be legally responsible." (*Id*.)

52. The Indemnification Agreement further set forth that Winia's indemnification obligations "appl[y] whether or not the claim or loss was alleged to have been caused in whole or in part by the negligence or fault of MC. Further, this agreement applies even when [Winia] is not named as a party to the lawsuit." (*Id*. at 2.)

53. Also, in Section III of the Indemnification Agreement, titled "**Insurance**," Winia agreed that it would secure Commercial General Liability Insurance (the "Insurance") "for at least five (5) years" following the termination of the contractual relationship between Winia and MC. (*Id*.)

54. Section III specifies that the Insurance must have a coverage limit of at least $1,000,000 per occurrence, and an aggregate coverage limit of at least $10,000,000. (*Id*.). The insurance is required to be written by a United States Insurance Company that has an A.M. Best rating of A XIII or better. The Insurance is required to be "primary and non-contributory."

55. Section III also requires that MC be named as an additional insured under the Insurance policy, and that the Insurance policy documents include a "vendor endorsement" that "confers and extends rights" to MC as an insured party. (Ex. D at 3.)

**The Covered Claims and MC's Losses**

56. Prior to its ongoing financial deterioration, Winia reimbursed MC under the parties' contract for losses it incurred as a result of claims of personal injury and property damages stemming from Winia products (the "Covered Claims").

57. Winia maintained Insurance as required and had a self-funded $75,000.00 deductible. The carrier of the Insurance and Winia were the sources of the funds with which Winia reimbursed MC for losses stemming from product liability Claims. But Winia is no longer contributing its self-insured portion of $75,000.00 to settle Covered Claims as required.

58. Winia's Insurance will lapse on November 30, 2023. On information and belief, based on Winia's string of failures to meet its obligations and its deteriorated financial situation, as set forth above, it will not renew its Insurance.

59. Indeed, Winia has ceased to indemnify MC for losses resulting from Covered Claims that have been resolved. Claimants are thus looking to MC to satisfy claims that Winia should pay. To date, Winia has failed to pay at least $135,000 in indemnity obligations.

60. At present, there are a number of Covered Claims related to Winia products pending against MC that have not yet been resolved and are subject to the terms of the Indemnification Agreement. MC expects to receive additional Covered Claims in the future.

61. MC estimates that its exposure is greater than $1,000,000 on current and future claims with respect to Winia's failure to honor the parties' agreed indemnification and insurance terms.

## COUNT I

## BREACH OF CONTRACT

62. MC repeats and realleges the foregoing allegations as if fully set forth herein.

63. Winia breached and failed to perform under the parties' contract on multiple occasions, with its breaches typically falling within one of three of the following categories.

64. First, Winia materially breached the parties' contract by failing to deliver the promised microwaves to MC as memorialized in the Purchase Orders, as described above.

65. Prior to these failures of performance by Winia, MC fully performed its obligations under the Purchase Orders and stood ready to perform any future obligations under the parties' contract, including with respect to the Purchase Orders.

66. As a result of Winia's material breach and failure to honor the Purchase Orders, and at the time of this filing, MC has suffered damages at least in the amount of $199,620.72 in lost profits, and consequential damages in additional amounts to be proven at trial.

67. Second, Winia materially breached the parties' contract by failing to make the agreed quality assurance payments.

68. MC has fully performed its obligations under the parties' contract, including with respect to quality assurance.

69. As a result of Winia's material breaches of the parties' quality assurance terms, MC has suffered damages at least in the amount of $277,290.90, plus additional amounts to be proven at trial.

70. Third, pursuant to the terms set forth in the Indemnification Agreement portions of the parties' contract, Winia agreed to indemnify MC for any losses "which resulted or [are] alleged to have resulted from [Winia's] products or its marketing, sale, rental or use."

71. The terms in the Indemnification Agreement do not temporally limit Winia's obligation.

72. Winia has failed to indemnify MC as required with respect to Covered Claims that have been resolved. To date, Winia has failed to pay at least $135,000 in indemnity obligations. There are a number of Covered Claims that have not yet been resolved and MC expects to receive additional Covered Claims in the future.

73. Accordingly, MC seeks damages at least in the amount of $135,000, plus additional damages in an amount to be proven at trial.

## COUNT II

**DECLARATORY JUDGMENT ACT 28 U.S.C. § 2201 et. seq. – Maintenance of Insurance Per the Indemnification Agreement**

74. MC repeats and realleges the allegations contained in Paragraphs 1 through 61 as if fully set forth herein.

75. Pursuant to the terms in the Indemnification Agreement, Winia promised to maintain Insurance naming MC as an additional insured for a duration of at least 5 years from the termination of the contractual relationship between Winia and MC. But Winia's Insurance will lapse on November 30, 2023, and on information and belief, based upon Winia's failures to pay its deductible portion of several claims, and its failures to produce and deliver tens of thousands or ordered products, and its financial deterioration, Winia's Insurance will not be renewed.

76. As a direct and proximate result of Winia's expected failure to maintain the Insurance described in the Indemnification Agreement, MC will suffer actual and/or consequential damages.

77.     MC seeks a declaratory judgment that Winia has continuing obligations under the parties' contract, as set forth in the terms of the Indemnification Agreement, to maintain the Insurance described therein through at least March 1, 2027.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

A. For judgment in favor of Plaintiff and against Defendant on Count I;

B. For compensatory and consequential damages in favor of Plaintiff and against Defendants, sufficient to make MC whole in response to the damages sustained as a result of Defendants' actions set forth herein in an amount to be proven at trial but not less than $611,911.12;

C. That the Defendant be ordered to pay Plaintiff interest on all monetary awards as allowed by law;

D. For declaratory judgment in favor of Plaintiff and against Defendant on Count II that Winia is required to maintain Insurance as required by the Indemnification Agreement through March 1, 2027, at the earliest;

E. For MC's attorneys' fees pursuant to Section IV of the Indemnification Agreement; and

F. For such other and further relief as the Court deems just and proper.


Dated: August 11, 2023

                HOLLAND & KNIGHT LLP
                *Attorneys for Plaintiff*

                By:   /s/*John M. Toriello*
                John M. Toriello
                Holland & Knight, LLP
                31 West 52nd Street
                12th Floor
                New York, NY 10019
                United States of America
                T: 212.513.3200
                F: 212.385.9010
                *john.toriello@hklaw.com*

                                                *Of Counsel*
Martin G. Durkin
Michael A. Grill
Maxwell Hansen
Holland & Knight LLP
150 N. Riverside Plaza, Suite 2700
Chicago, Illinois 60606
T: 312.715.5791
F: 312.578.6666
*martin.durkin@hklaw.com*
*michael.grill@hklaw.com*
*maxwell.hansen@hklaw.com*

**CERTIFICATION PURSUANT TO LOCAL RULE 11.2**

I hereby certify that, based on information and belief, the matter in controversy is not the subject of any other action pending in this court or any other court, or of any pending arbitration or administrative proceeding.

Dated: August 11, 2023

                                        HOLLAND & KNIGHT LLP
                                        *Attorneys for Plaintiff*

                                        By: /s/*John M. Toriello*