# EXHIBIT A

## INDEMNIFICATION AGREEMENT

This Indemnification Agreement ("Agreement") is made and entered into as of 22nd day of February, 2021, by and between WINIA ELECTRONICS CO., LTD., with its principle place of business in 559, Yonga-Ro, Gwangsan-gu, Gwangju, 6228, Republic of Korea ("Manufacturer"), and CNA International Inc., an Illinois corporation d/b/a MC Appliance Corporation ("MC"), with its principle place of business at 940 Central Avenue, Wood Dale, Illinois 60191

This Agreement is made with reference to the following facts:

WHEREAS, there exists a business relationship between MC and Manufacturer, whereby MC will submit a purchase order and Manufacturer upon acceptance of the terms of that purchase order will provides MC and its Customers with certain products for sale to the public consumer.

WHEREAS, in this Agreement, the parties wish to memorialize certain obligations between them, that are considered necessary and crucial to their purchase orders and business relationship.

NOW, THEREFORE, the Parties, for good and adequate consideration, receipt of which is hereby acknowledged, agree as follows:

**I.   Application**

The terms and conditions of this Indemnification Agreement shall bind the parties and apply to all products Manufacturer supplies to MC and MC's "Affiliates," (which for the purpose of this Agreement includes all of MC's customers, affiliates, subsidiaries, directors, officers, employees and agents.

**II.  Indemnification and Product Liability**

A.   Manufacturer shall indemnify, defend and hold MC and MC's Affiliates harmless against and from any and all claims, lawsuits, fines, losses, civil penalties or actions, costs, liabilities, damages, and expenses (including attorneys' fees) incurred or to be incurred, which may be brought against MC and/or its Affiliates by any person, corporation, government, governmental agency, class or any other entity whatsoever, arising or alleged to have arisen out of the following:

1) the death of or injury to any person (including any employee or agent of Manufacturer) or property damage which resulted or is alleged to have resulted from the Manufacturer's products or its marketing, sale, rental or use, including but not limited to defects in the formula, processes or ingredients in the Products or defects in the packaging or labeling or from;

2) the death of or injury to any person (including any employee or agent of Manufacturer) or property damage which resulted or is alleged to have resulted from any acts or omissions of Manufacturer, its employees and agents, contractors, subcontractors and/or any other persons for whose conduct it may be or is alleged to be legally responsible, including but not limited to defects in the formula, processes or ingredients in the Products or defects in the packaging or labeling or from;



1

    3) the failure of Manufacturer to fully comply with any standards, warranties, guarantees or representations of Manufacturer hereunder, including the failure of Manufacturer to comply with all applicable standards and laws including but not limited to defects in the formula, processes or ingredients in the Products or defects in the packaging or labeling;

    4) any breach or alleged breach of this Agreement; or

    5) the infringement of any patent, design, trade name, trademark, copyright, trade secret or any other right or entitlement of a third party.

  B. This agreement to indemnify, defend and hold MC and its Affiliates harmless applies whether or not the claim or loss was alleged to have been caused in whole or in part by the negligence or fault of MC. Further, this agreement applies even when the Manufacturer is not named as a party to the lawsuit.

  C. MC shall cooperate in the defense of any claim for which indemnity is sought under this Section. Although Manufacturer shall have control of the defense of any action brought above, Manufacturer agrees to comply with the following requirements in connection with the conduct of the defense of any claim in which MC has been named a party:

    1) Manufacturer shall choose defense counsel that is reasonable satisfactory to MC, if however, MC reasonably determines that separate counsel is appropriate, MC will be entitled to retain separate counsel at CNA's expense and;

    2) Manufacturer shall use reasonable efforts to keep MC informed of all material information pertaining to a claim. Manufacturer shall not enter into any settlement or compromise of the claim that would result in injunctive relief, financial liability or the admission of liability by MC without first obtaining MC's prior written consent.

### III. Insurance

  A. In addition to the Indemnity Agreement as outlined in Section II herein, Manufacturer shall maintain and for at least five (5) years thereafter, Commercial General Liability Insurance which is written on a U.S. insurance company on an occurrence basis which is primary and non-contributory as to any insurance maintained by MC, with insurance company maintaining an A.M. Best rating of A VII or better or otherwise approved by MC in writing.

  B. The minimum insurance coverage to be maintained by Manufacturer shall be commercial general liability insurance, including products and completed operations, broad form contractual and advertising liability coverage, providing bodily injury and property damage coverage on an occurrence form, affording minimum single limit protection of no less than One Million Dollars ($1,000,000.00) per occurrence and Ten Million Dollars ($10,000,000) in the aggregate whether by primary policy only or primary policy plus excess policy with deductibles no greater than Seventy-Five Thousand Dollars ($75,000.00) per occurrence.



C. Manufacturer shall name CNA INTERNATIONAL, INC., d/b/a MC APPLIANCE CORPORATION as an "ADDITIONAL INSURED VENDOR" on such policy. The policy must also contain a "VENDOR ENDORSEMENT" that confers and extends rights to CNA INTERNATIONAL, INC., d/b/a MC APPLIANCE CORPORATION as an insured. Insurance shall also include waiver of subrogation provisions in favor of the MC. Manufacturer will have its insurer provide MC with a current Certificate of Insurance evidencing the required coverage, as well as renewal certificates at least thirty (30) days prior to the expiration of coverage. Manufacturer further agrees that upon notice of a claim against MC involving merchandise sold to MC or to MC's customers through MC, that Manufacturer will immediately and without delay notify all insurance carriers which issued policies to Manufacturer. Thereafter, Manufacturer agrees to keep MC fully informed of all activity, including but not limited to providing MC with all correspondence, and action taken with regard to any claim by any insurance carrier. The purchase of insurance and the furnishing of certificates as required herein shall not be in satisfaction of Manufacturer's obligations hereunder or in any way modify or limit Manufacturer's agreement to indemnify, defend, and hold MC harmless as required in Section III.

## IV. Disputes and Venue

Governing Law. The Parties agree to be bound by the terms of this Agreement and said Binding Provisions will be governed by and construed under the laws of the State of Illinois, United States of America, specifically including the provisions of the Uniform Commercial Code, as adopted by the State of Illinois and excluding the provisions of the Convention on the International Sale of Goods. Manufacturer submits to the jurisdiction of the courts located in the, Federal District Court of the State of New Jersey, United States of America in the event of any proceedings in connection with this transaction. In the event an action is instituted in court to enforce the terms of this agreement, the losing party shall, in addition to being liable for any damages awarded by the court, shall also be responsible for the other party's fees and costs including reasonable attorney fees.

## V. Unenforceability

If one or more of the terms of this Agreement are held to be unenforceable under applicable law, the Parties agree that they will continue to be bound by remaining terms of this Agreement.

## VI. Counterparts.

This Agreement may be executed in one or more counterpart copies, each of which will be deemed to be an original copy hereof, and all of which, when taken together, will be deemed to constitute one and the same binding agreement. The exchange of copies of this letter and of signature pages by electronic mail or facsimile transmission shall constitute effective execution and delivery hereof as to the Parties and may be used in lieu of the original letter for all purposes.

3

IN WITNESS WHEREOF, the parties hereto have executed this Indemnity Agreement on the day and year first above written and further swear and affirm that they have the authority to bind their respective principals to this Agreement.

| WINIA ELECTRONICS CO., LTD. | CNA INTERNATIONAL, INC.: |
|---|---|
| For: Winia Electronics | For: CNA International |
| By: *Park, jai yong* | By: *Peter Choe* |
| Its: Head of Living appliances Operations | Its: Managing Director / Operations |

4